COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                       NOS.
2-09-153-CR 

       2-09-154-CR 

       2-09-155-CR

 

 

ROBERT ROMO                                                                   APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE 211TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I. 
Introduction

In four
points, Appellant Robert Romo appeals his three convictions for possession of a
controlled substance in a drug-free zone. 
We affirm.  

II. 
Factual and Procedural History








In 2007,
during the third week of January, Carrollton Police narcotics investigator
Travis Putman received a tip from a confidential informant that Romo was
dealing a large volume of marihuana at a specific house, 2024 Topaz Drive,
Carrollton, Texas,[1]
and that Romo drove a white Honda Accord. Investigator Putman ran Romo=s name
through the Texas driver=s license database, and it
revealed that 2024 Topaz Drive was Romo=s home
address.








On
February 5, 2007, Investigator Putman drove by 2024 Topaz Drive, saw a white
Honda Accord in the driveway, and ran the Accord=s
license plateCit was registered to Romo.  The next day, he, Carrollton Police Officer
King, and Rocky (a trained narcotics detecting canine) went to the house around
6 a.m. intending to conduct a canine drug sniff; they left when they saw
vehicles there, including the white Honda Accord.  They returned around 10:30 a.m., noted that
the vehicles were gone, and approached the house through the public alleyway.[2]  After Rocky alerted twice to the presence of
an illegal drug odor from the house=s
backyard fence and the officers saw what appeared to be marihuana in garbage
bags through the slats in the fence, Investigator Putman sought a search
warrant.  Other officers arrived at the
scene while Investigator Putman obtained the warrant; when Romo returned to the
house, these officers detained him as soon as the warrant was issued.

The
pertinent portion of the affidavit submitted in support of the warrant
application states:  

On or about the third week of January 2007, your Affiant received
information from an informant who had not yet been made credible that Robert
Romo was a large volume marihuana dealer that lived at 2024 Topaz Drive, in
Carrollton.  The informant also advised
your Affiant that Robert Romo drove a white Honda Accord.

 

Your Affiant searched the Texas Department of Public Safety records,
and located a Robert Earl Romo, with a date of birth of 11-26-1970, and an
address of 2024 Topaz Drive, Carrollton, Texas.

 

On February 5th, 2007, your Affiant drove by the suspect location, and
observed a white Honda Accord, with Texas registration AJ43-FZF@, parked in the driveway
located behind the suspect location. The registration showed the vehicle to be
registered to a Robert Romo.

 








On February 6th, 2007, at
approximately 1030, your Affiant, Canine Officer King #734, and Canine Rocky, a
trained narcotics detecting canine, went to the suspect location.  Canine Rocky conducted a free air sniff of
the garage door and backyard fence of the suspect location.  The suspect location=s
driveway, garage door, and backyard fence is located in the rear of the
residence, is accessible by a public alleyway, and is not enclosed by any
fencing or barrier that would prevent access by the public.  Canine Rocky alerted two separate times to
the presence of the odor of an illegal drug on the wooden fence=s gate,
approximately two feet south of where the wooden fence connects to the
garage.  After the second alert, your
Affiant and Officer King looked through a hole in the wooden fence at the
location where Canine Rocky alerted.  The
hole that King and your Affiant looked through was there prior to the
Officer[s] arrival, and did not require the Officers to manipulate it in any
manner in order for them to see in the backyard.  Both King and your Affiant observed several
black trash bags in the backyard of the suspect place.  The trash bags, which were approximately one
to four feet from the fence, all appeared to be full.  King and your Affiant observed a green leafy
substance sticking out of one of the bags. 
Both King and your Affiant observed that the green leafy substance had
the same color, consistency, and texture of marihuana. 

Among other items admitted in
evidence, the trial court admitted photographs of 2024 Topaz Drive=s
driveway, of the backyard fence, and of the view through the fence slats of
black garbage bagsCone of which had what
Investigator Putman described as a hard brick form of marihuana poking out of
it. 

After
they obtained the search warrant, the officers found four trash bags containing
approximately eighty pounds of marihuanaCa street
value of approximately $70,000Cin Romo=s
backyard.  In Romo=s
garage, they found, among other things, a handgun, a plastic vacuum sealer
machine, a digital scale, a grinder, a pipe, a psilocybin mushroom, and more
marihuana.  In Romo=s house,
they found, among other things, methamphetamine, marihuana, and plastic
baggies.








Romo was
charged with possession of the following controlled substances within 1,000
feet of a middle school:  psilocin (a
mushroom), in the amount of more than one gram but less than four grams;
methamphetamine, in the amount of less than one gram; and marihuana, in the
amount of 2,000 pounds or less but more than fifty pounds.[3]

Romo
moved to suppress this evidence, and the trial court denied the motion.[4]  A jury found Romo guilty of all three charges
and sentenced him to seven years=
confinement and a $10,000 fine for possession of the psilocin; five years=
confinement and a $2,000 fine for possession of the methamphetamine; and twenty
years=
confinement and a $20,000 fine for possession of the marihuana, to run
concurrently.  This appeal followed.








III. 
Suppression

In his
first two points, Romo complains that the trial court erred by overruling his
motion to suppress because the drugs (1) Awere the
fruits of and seized as a direct result of the search@ in
violation of the Fourth and Fourteenth Amendments and (2) were seized in
violation of article 1, section 9 of the Texas constitution and article 38.23
of the code of criminal procedure.  In
his third point, he complains that the trial court erred by overruling his motion
to suppress because the search warrant=s
supporting affidavit failed to state probable cause and to meet the
requirements for a valid affidavit under the code of criminal procedure and the
United States and Texas Constitutions.

A.  Standard of Review








We
review a trial court=s ruling on a motion to suppress
evidence under a bifurcated standard of review. 
Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24B25 (Tex.
Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App.
2000), modified on other grounds by State v. Cullen, 195 S.W.3d 696
(Tex. Crim. App. 2006).  Therefore, we
give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108B09 (Tex.
Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex.
Crim. App. 2002).  But when
application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court=s
rulings on those questions de novo.  Amador,
221 S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim.
App. 2005); Johnson, 68 S.W.3d at 652B53.








Stated
another way, when reviewing the trial court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.  Wiede, 214 S.W.3d at 24; State v.
Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact
findings, we determine whether the evidence, when viewed in the light most
favorable to the trial court=s
ruling, supports those fact findings.  Kelly,
204 S.W.3d at 818B19. We then review the trial
court=s legal
ruling de novo unless its explicit fact findings that are supported by the
record are also dispositive of the legal ruling. Id. at 818.

When the
record is silent on the reasons for the trial court=s
ruling, or when there are no explicit fact findings and neither party timely
requested findings and conclusions from the trial court, we imply the necessary
fact findings that would support the trial court=s ruling
if the evidence, viewed in the light most favorable to the trial court=s
ruling, supports those findings.  State
v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); see
Wiede, 214 S.W.3d at 25.  We then
review the trial court=s legal ruling de novo unless
the implied fact findings supported by the record are also dispositive of the
legal ruling.  Kelly, 204 S.W.3d
at 819.

We must
uphold the trial court=s ruling if it is supported by
the record and correct under any theory of law applicable to the case even if
the trial court gave the wrong reason for its ruling.  State v. Stevens, 235 S.W.3d 736, 740
(Tex. Crim. App. 2007); Armendariz v. State, 123 S.W.3d 401, 404 (Tex.
Crim. App. 2003), cert. denied, 541 U.S. 974 (2004).








In
assessing the sufficiency of an affidavit for an arrest or a search warrant,
the reviewing court is limited to the four corners of the affidavit. Hankins
v. State, 132 S.W.3d 380, 388 (Tex. Crim. App.), cert. denied, 543
U.S. 944 (2004); Jones v. State, 833 S.W.2d 118, 123 (Tex. Crim. App.
1992), cert. denied, 507 U.S. 921 (1993).  The reviewing court should interpret the
affidavit in a common sense and realistic manner, recognizing that the
magistrate was permitted to draw reasonable inferences.  Davis v. State, 202 S.W.3d 149, 154
(Tex. Crim. App. 2006); Hankins, 132 S.W.3d at 388. Unconstitutional
portions of a search warrant do not necessarily invalidate the entire warrant
or taint all of the evidence seized pursuant to the warrant. Massey v. State,
933 S.W.2d 141, 148 (Tex. Crim. App. 1996). 
If only certain portions of a search warrant are invalid, only the
evidence gathered pursuant to the offending portions is tainted.  Id.

B.  Analysis








The
essence of Romo=s argument in his first two
points is that an illegal search occurred when the drug dog sniffed his garage
and backyard fence and the police officers peered into his backyard through an
opening in the fence and saw what appeared to be marihuana.  He concedes that an illegal search did not
occur when the police officers Afirst
looked at his garage@ because that area Awas
obviously open for visual inspection from the alley.@[5]  Instead, he complains that the marihuana in
the backyard was not knowingly exposed to public view, and that A[u]nder
any analysis, an illegal search took place and the resulting information used
in the affidavit to secure a search warrant later that same morning was
obviously the fruits of the illegal search.@








The
Fourth Amendment protects against unreasonable searches and seizures by
government officials.  U.S. Const. amend.
IV; Wiede, 214 S.W.3d at 24.  To
suppress evidence because of an alleged Fourth Amendment violation, the
defendant bears the initial burden of producing evidence that rebuts the
presumption of proper police conduct.  Amador,
221 S.W.3d at 672; see Young v. State, 283 S.W.3d 854, 872 (Tex. Crim.
App.), cert. denied, 180 S. Ct. 1015 (2009).  A defendant satisfies this burden by
establishing that a search or seizure occurred without a warrant.  Amador, 221 S.W.3d at 672. Once the
defendant has made this showing, the burden of proof shifts to the State, which
is then required to establish that the search or seizure was conducted pursuant
to a warrant or was reasonable.  Id.
at 672B73; Torres
v. State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); Ford v. State,
158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

Whether
a search is reasonable is a question of law that we review de novo.  Kothe v. State, 152 S.W.3d 54, 62
(Tex. Crim. App. 2004). Reasonableness is measured by examining the totality of
the circumstances.  Id. at 63. 
It requires a balancing of the public interest and the individual=s right
to be free from arbitrary detentions and intrusions.  Id. 
A search conducted without a warrant is per se unreasonable unless it
falls within one of the Aspecifically defined and
well-established@ exceptions to the warrant
requirement.  McGee v. State, 105
S.W.3d 609, 615 (Tex. Crim. App.), cert. denied, 540 U.S. 1004 (2003); see
Best, 118 S.W.3d at 862.













However,
before we reach reasonableness, we must first determine whether a search even
occurred.  Our sister court has held that
a dog sniff of a front door is not a search. 
See Rodriguez, 106 S.W.3d at 228B29
(holding that appellant did not have a reasonable expectation of privacy
outside his home where the drug dog sniffed because the front door area was not
enclosed, it was used as a main entrance to the house, and it was not protected
from observation by passersby); see also Smith v. State, No.
01-02-00503-CR, 2004 WL 213395, at *3 (Tex. App.CHouston
[1st Dist.] Feb. 5, 2004, pet. ref=d) (mem.
op., not designated for publication) (holding that appellant=s
privacy interests under the U.S. and Texas Constitutions were not invaded when
officer walked up appellant=s
driveway to allow drug dog to sniff appellant=s garage
door), cert. denied, 544 U.S. 961 (2005).  The Rodriguez court reasoned that
because a dog sniff discloses only the presence or absence of narcotics, in
which there is no reasonable expectation of privacy,[6]
and does not expose noncontraband items, activity, or information that would
otherwise remain hidden from public view, it does not intrude on a legitimate
expectation of privacy and is thus not a Asearch@ for
Fourth Amendment purposes.  106 S.W.3d at
228B29; see
also Porter v. State, 93 S.W.3d 342, 346B47 (Tex.
App.CHouston
[14th Dist.] 2002, pet. ref=d)
(holding same).  We agree with this
reasoning and conclude that Rocky=s sniffs
of the garage door and the backyard fence were not searches under the Fourth
Amendment or the Texas constitution because he sniffed areas that were not
protected from observation by passersby and because Romo had no reasonable
expectation of privacy in the odor of marihuana coming from his backyard.








Furthermore,
we need not address whether the officers peeking through the fence after Rocky
alerted twice constituted a search,[7]
because probable cause to support the issuance of a search warrant exists when
the facts submitted to the magistrate are sufficient to justify a conclusion
that the object of the search is probably on the premises to be searched at the
time the warrant is issued.  Cassias
v. State, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986).  An alert by a drug-detection dog outside a
person=s
residence is sufficient to provide probable cause to search the site.  See Stauffer v. State, No.
14-03-00193-CR, 2004 WL 253520, at *3 (Tex. App.CHouston
[14th Dist.] Feb. 12, 2004, pet. ref=d) (not
designated for publication) (relying on Rodriguez and holding that drug
dog=s alert
outside the garage area of the home provided probable cause to search), cert.
denied, 543 U.S. 1151 (2005); Smith, 2004 WL 213395, at *5 (ABecause
the drug-dog=s positive alert for drugs was
alone sufficient to establish probable cause for the search, we need not
address the other allegations stated in the affidavit.@)
(citation omitted); Porter v. State, Nos. 14-01-00687-CR, 14-01-00688-CR,
2002 WL 1488983, at *3 (Tex. App.CHouston
[14th Dist.] July 11, 2002, pet. ref=d) (not
designated for publication) (reciting that a canine sniff is not a search under
the Fourth Amendment or under article I, section 9 of the Texas constitution,
and that a trained canine=s alert is sufficient to provide
probable cause for a search).  The
affidavit in support of the search warrant specifically set out that Rocky
alerted two separate times to the backyard fence.  Therefore, without considering Investigator
Putman=s
statements about seeing the marihuana through the fence slats, or whether the
tip provided by the confidential informant was Astale@ because
it was over a week old, the affidavit contained sufficient information to
support a determination of probable cause. 
See Massey, 933 S.W.2d at 148.








Additionally,
besides reporting Rocky=s two alerts, the affidavit was
supported by other facts recited prior to Investigator Putman=s
statements about what he saw by looking through the fence slats.  That is, Investigator Putman recited that,
during the third week of January 2007, a confidential informant gave him
information that Romo was a large volume marihuana dealer that lived at 2024
Topaz Drive in Carrollton and drove a white Honda Accord. He then verified
these facts before he and Officer King approached the house and Rocky sniffed
the fence.  See Richardson v.
State, No. 01-04-00833-CR, 2006 WL 488661, at *4B5 (Tex.
App.CHouston
[1st Dist.] 2006, pet. ref=d) (mem.
op., not designated for publication) (concluding that the affidavit alleged
sufficient information for probable cause to justify issuing warrant when it
was based on informant=s tip, subsequent corroboration
of the information in the tip, and drug dog alerted at the front and back doors
of appellant=s home); Blackburn v. State,
No. 02-02-00158-CR, 2003 WL 22311253, at *2B3 (Tex.
App.CFort
Worth Oct. 9, 2003, pet. ref=d) (mem.
op., not designated for publication) (concluding that affidavit alleged
sufficient information for probable cause to justify issuing warrant when it
was based on informant=s tip, subsequent corroboration
of the information in the tip, and drug dog alerted to appellant=s
storage unit).  We overrule Romo=s first
three points.

IV.  Jury Charge








In his
final point, Romo argues that the trial court erred by overruling his request
for special issues to be presented to the jury. 
Specifically, he contends that the trial court should have included the
following special issues to the jury: A(1) Was
the Carrollton Police Department on the residence property of Robert Romo prior
to the judge signing the warrant?@ and A(2) Do
you find the evidence seized on the residence property of Robert Romo was the
result of the search that started without a warrant?@  The State responds that the requested issues
were improper because there was no disputed fact issue for the jury to
determine.

Although
Romo did not specifically request an article 38.23 instruction, this section
governs our analysis.  See Tex.
Code Crim. Proc. Ann. art. 38.23 (Vernon 2005); see also Oursbourn v. State,
259 S.W.3d 159, 181 & n.85 (Tex. Crim. App. 2008) (requiring 38.23
instruction as law applicable to the case if there is a disputed fact
issue).  Under article 38.23, no evidence
obtained in violation of the federal or state constitutions or laws may be
admitted in evidence against the accused. 
Tex. Code Crim. Proc Ann. art. 38.23. 
When the evidence raises an issue regarding a violation, the jury must
be instructed that if it believes, or has a reasonable doubt, that the evidence
was obtained in violation of the law, it must disregard the illegally obtained
evidence.  Id.








A
defendant=s right to the submission of a
jury instruction under article 38.23 is limited to disputed issues of fact that
are material to his claim of a constitutional or statutory violation that would
render evidence inadmissible. Madden v. State, 242 S.W.3d 504, 510 (Tex.
Crim. App. 2007); see also Holmes v. State, 248 S.W.3d 194, 199 (Tex.
Crim. App. 2008) (AThere is, of course, nothing to
instruct the jury about if the suppression question is one of law only, and
there is nothing to instruct the jury about unless there is affirmative
evidence that raises a contested fact issue.@).  To raise a disputed fact issue warranting an
article 38.23(a) jury instruction, there must be some affirmative evidence that
puts the existence of that fact into question. 
Madden, 242 S.W.3d at 513. 
If there is no dispute regarding the factual basis for the challenged
search or seizure, then the legality of the conduct is determined by the trial
judge aloneCas a question of lawCand a
jury instruction is inappropriate.  Id.
at 510.  AThe
disputed fact must be an essential one in deciding the lawfulness of the
challenged conduct.@ 
Id. at 511.

Here,
the first requested issue would have asked the jury whether the officers were
on the Aresidence
property of Robert Romo prior to the judge signing the warrant[.]@  However, it was undisputed that Investigator
Putman, Officer King, and Rocky were on Romo=s
property prior to obtaining a warrant. Therefore, Romo was not entitled to
inclusion in the jury charge of the first requested issue because it did not
present an issue of fact that was affirmatively contested.  See id.








The
second requested issue would have asked the jury whether the evidence seized on
Romo=s
property was the result of a search that started without a warrant.  Again, however, there was no factual dispute
about the steps Investigator Putman, Officer King, and Rocky took prior to
obtaining a warrantCrather, the legality of their
conduct was determined as a question of law by the trial court.  See id. Therefore, Romo was also not
entitled to inclusion in the jury charge of the second requested issue.

We
overrule Romo=s fourth point. 

V. 
Conclusion

Having
overruled Romo=s four points, we affirm the
trial court=s judgments.

 

BOB MCCOY

JUSTICE

 

PANEL:  DAUPHINOT, GARDNER, and
MCCOY, JJ.

 

DAUPHINOT, J. concurs without opinion

 

PUBLISH

 

DELIVERED: April 8, 2010











[1]2024 Topaz Drive is
approximately 270 feet from a middle school.





[2]Investigator Putman
described the driveway of 2024 Topaz Drive as an open driveway backing up to a
public alleyway.  Carrollton Police
Officer Edward Teniente described the driveway as located in the rear of the
house. Along the driveway were gas meters accessible by the alleyway.





[3]See Tex. Health & Safety
Code Ann. ' 481.102(6) (Vernon Supp.
2009) (stating that penalty group 1 includes methamphetamine); id. ' 481.103(a)(1)
(stating that penalty group 2 includes psilocin); id. ' 481.115(b) (stating
that possession of less than one gram of a penalty group 1 substance is a state
jail felony); id. ' 481.116(c) (stating
that possession of more than one gram but less than four grams of a penalty
group 2 substance is a third degree felony); id. ' 481.121(b)(5)
(stating that the offense of possession of marihuana is a second degree felony
if the amount possessed is 2,000 pounds or less but more than 50 pounds); id.
' 481.134 (enhancing
the punishment for committing possession offenses in, on, or within 1,000 feet
of the premises of a school).





[4]During the suppression
hearing held during the trial of this case, the trial court took judicial
notice of the earlier proceedings in this case prior to its dismissal and
reindictment, including a motion to suppress filed on October 4, 2007, and a
suppression hearing held on the same day. 
The trial court in the earlier case took judicial notice of the
affidavit at the hearing and denied the motion based on the affidavit.  It filed written findings of fact and
conclusions of law stating that Romo failed to properly challenge probable
cause for the search warrant and to raise any challenge to the truthfulness or
accuracy of the officer=s statements in the
affidavit and that probable cause existed and the search was proper.





[5]Romo did not have a
reasonable expectation of privacy in his open driveway area and no Fourth
Amendment right was violated by the officers when they approached the rear of
the house through this area because A[a]reas around a home that are readily
accessible, such as driveways . . . are not accorded the same degree of Fourth
Amendment protection as is the interior of a residence.@  Rodriguez v. State, 106 S.W.3d 224,
228 (Tex. App.CHouston [1st Dist.] 2003,
pet. ref=d), cert. denied,
540 U.S. 1189 (2004).  Nothing in the
record indicates that Romo displayed any Ano trespassing@ signs or other evidence indicating that he
wished to keep people off his property, and as previously articulated, the back
driveway of the home was not enclosed, was open to the alleyway at the rear of
the house, and gas meters were located on the driveway.





[6]The Rodriguez
court states, AThere is no legitimate
expectation or interest in >privately= possessing an illegal narcotic.@ 106 S.W.3d at 229; see
Wilson v. State, 98 S.W.3d 265, 272B73 (Tex. App.CHouston [1st Dist.] 2002, pet. ref=d) (holding that a dog
sniff of the area outside the door of a hotel room is not a search under the
Fourth Amendment or the Texas constitution because the dog=s sniff does not explore
the details of the hotel room and the sniff reveals nothing about the room
other than the presence of cocaine, in which there is no legitimate privacy
interest); see also United States v. Jacobsen, 466 U.S. 109, 122, 104 S.
Ct. 1652, 1661 (1984) (AThe concept of an
interest in privacy that society is prepared to recognize as reasonable is, by
its very nature, critically different from the mere expectation, however well
justified, that certain facts will not come to the attention of the
authorities.@).





[7]And although Romo argues
in his third point that the search warrant and affidavit failed to state
probable cause because the supporting affidavit:  (1) Afailed to set out any facts which would justify a
search of the inside of the house,@ (2) Afailed to state probable cause to search at the
exact address of 2024 Topaz Drive, Carrollton, Denton County, Texas named in
the search warrant,@ (3) is stale and A[n]o specific dates at
all [were] given for the allegations concerning >what an informant not yet
made credible= said to the Affiant,@ (4) Adoes not state probable
cause to believe that a crime was being committed by any particular person,@ and (5) does not
describe or state anything about the quantity of marihuana seen in Romo=s backyard, he did not
raise the first, second, fourth, and fifth sub-points in either his October
2007 or April 2009 motions to suppress or during the hearings on these motions.
These four sub-points have not been preserved. 
See Tex. R. App. P. 33.1. Based on our discussion below, we also
need not discuss his third sub-point. See Tex. R. App. P. 47.1.